International Asbestos Removal, Inc. v Beys Specialty, Inc. (2020 NY Slip Op 04370)





International Asbestos Removal, Inc. v Beys Specialty, Inc.


2020 NY Slip Op 04370


Decided on July 30, 2020


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 30, 2020

Renwick, J.P., Mazzarelli, Moulton, González, JJ.


652494/12 11130A 11130

[*1]International Asbestos Removal, Inc., Plaintiff-Respondent,
v
Beys Specialty, Inc., et al., Defendants-Appellants.


Milber Makris Plousadis & Seiden, LLP, Woodbury (Joseph J. Cooke of counsel), for appellants.
Robinson Brog Leinwand Greene Genovese & Gluck P.C., New York (Michael E. Greene of counsel), for respondent.



Judgment, Supreme Court, New York County (Edward H. Lehner, J.H.O.), entered January 15, 2019, awarding plaintiff the principal amount of $588,166.63, unanimously modified, on the law and the facts, to reduce the award for removing vinyl asbestos floor tiles from $257,741.26 to $134,501.84 and the award for removing contaminated brick from $29,947.27 to $19,858.66, and to award defendant Beys Specialty, Inc. $85,261.27 on its counterclaim for backcharges, and otherwise affirmed, without costs. Appeal from order, same court and J.H.O., entered January 10, 2019, unanimously dismissed, without costs, as subsumed in the appeal from the judgment.
The J.H.O. erred in finding that plaintiff is entitled to be paid for the installation of 103 interior decontamination chambers (decons) based on mutual mistake. Plaintiff never pleaded mutual mistake. The J.H.O. raised the issue sua sponte nearly one year after the trial, effectively precluding defendants from offering evidence at trial to demonstrate its absence. In any event, plaintiff did not establish the requisite elements of mutual mistake.
However, the parties fully litigated their interpretations of the subcontract's provisions. The contractual language, relevant trial testimony and documentary evidence support the J.H.O.'s conclusion that plaintiff is entitled to be paid for the installation of the 103 decons under Section 4.1 of the subcontract, which applies to an "increase or decrease in the number of units of work" for work within the scope of the contract, as well as under Section 2.1, upon which the J.H.O. did not rely.
Contrary to defendants' argument, the additional 103 decons do not constitute "Extra Work" under the subcontract because under Section 2.1 "[t]he Contractor may at any time order an increase or decrease in the number of units of work and Subcontractor shall perform said increase or decrease as though originally included in the Work hereunder."
Sections 2.1 and 4.1 do not permit anyone other than the Contractor to order the increase in the number of units of work. The trial evidence establishes that Beys exercised this authority to order the additional 103 decons. While it is true that it was STV Construction, Inc. (STV), on behalf of the owner, the New York City Housing Authority (NYCHA), that first ordered plaintiff to revise its Asbestos Abatement Work Plans to incorporate NYCHA's 504 Variance procedures, Beys then repeatedly directed plaintiff, explicitly and implicitly, to construct the decons.[FN1]
The trial evidence demonstrates that Beys engaged in conduct establishing that it ordered the additional decons under Sections 2.1 and 4.1 of the subcontract. Knowing that NYCHA [*2]required the additional decons in connection with the 504 Variance, Beys ordered plaintiff to "proceed with all filings without delay"; never directed plaintiff to stop providing the decons; and
specifically ordered plaintiff, in writing, to install a number of them.
Unlike Section 8.1 of the subcontract (entitled "Change Orders"), neither Sections 2.1 nor 4.1 require Beys's written order to increase the number of units of work. Defendants unpersuasively argue that Section 8.1(h)'s requirement, that plaintiff receive a directive "signed by George Kougentakis or Anna Kougentakis" before performing extra work, applies to Sections 2.1 and 4.1. To the contrary, Sections 2.1 and 4.1 do not refer to any part of Article 8 and address quantity overruns while Article 8 addresses "Extra Work." Moreover, plaintiff's Estimate, which states that the plaintiff would obtain "THE WRITTEN APPROVAL OF THE CUSTOMER" is not a document that is incorporated into the subcontract under Section 1.1 and in any event is limited to situations involving "Extra Work."
The record shows that the award for removing multiple layers of vinyl asbestos floor tiles should be limited to the STV-approved amount, in view of the subcontract's "Unit Price" that is based on square feet and not cubic feet and plaintiff's refusal to submit a change order proposal, as STV requested. It shows further that the award for removing contaminated brick should be calculated as per the quantity on the August 12, 2012 sign-off sheet, rather than a 2013 change order between Beys and STV that reflected separate extra work performed directly by Beys. The record supports the counterclaim for an award of various backcharges to Beys resulting from defects or omissions in plaintiff's work. However, the record does not support Beys's counterclaim for delays in connection with plaintiff's exterior asbestos abatement work. Beys failed to demonstrate that any such delays were attributable to plaintiff's incompetence. We modify the judgment accordingly.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: JULY 30, 2020
CLERK



Footnotes

Footnote 1:The parties use the undefined term "504 Variance" to refer to NYCHA's plan to make its apartments handicapped accessible under Section 504 of the Rehabilitation Act of 1973.